UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
————————————————————————

SHAVONNE LOWRY, on behalf of J.B.,

                          Plaintiff,

               V.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                        Defendant.
————————————————————————

**REPORT AND
RECOMMENDATION**

09-CV-458
(GTS/VEB)

## I. INTRODUCTION

In June of 2006, Plaintiff Shavonne Lowry filed an application for Supplemental Security Income ("SSI") benefits under the Social Security Act on behalf of her son, J.B. ("Claimant"), alleging disability based on asthma.[1] The Commissioner of Social Security denied the application.

Plaintiff, through her attorney, Jaya Shurtliff, Esq., commenced this action on April 17, 2009, by filing a Complaint in the United States District Court for the Northern District of New York. (Docket No. 1). Plaintiff seeks judicial review of the Commissioner's denial of benefits pursuant to 42 U.S.C. §§ 405 (g) and 1383 (c)(3).

On May 10, 2010, the Honorable Norman A. Mordue, Chief United States District Judge, referred this case to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket No. 15).

—————————————————

[1]Claimant is a minor. Thus, in accordance with Rule 5.2 (a) of the Federal Rules of Civil Procedure, he will be referred to as "Claimant" or by his initials in this Report and Recommendation.

## II. BACKGROUND

The relevant procedural history may be summarized as follows.  Plaintiff is the mother of Claimant, a minor child.  On June 30, 2006, Plaintiff filed an application for SSI benefits on Claimant's behalf, alleging disability beginning on February 1, 2006. (T at 25, 34).[2]  The application was denied initially on October 17, 2006.  Plaintiff filed a timely request for a hearing before an Administrative Law Judge ("ALJ"). (T at 32).  On October 7, 2008, a hearing was held in Binghamton, New York, before ALJ Michael Brounoff.  (T at 267).  Plaintiff, represented by counsel, appeared with Claimant and testified.  (T at 267).

On January 12, 2009, ALJ Brounoff issued a written decision denying Plaintiff's application for SSI benefits and finding that Claimant is not disabled.  (T at 13-24).   The ALJ's decision became the Commissioner's final decision on March 20, 2009, when the Appeals Council denied Plaintiff's request for review.  (T at 6-9).

Plaintiff, acting on Claimant's behalf, commenced this action on April 14, 2009 (Docket No. 1).  The Commissioner interposed an Answer on October 1, 2009. (Docket No. 9).   Plaintiff filed a supporting Brief on December 16, 2009. (Docket No. 13).   The Commissioner filed a Brief in opposition on January 6, 2010. (Docket No. 13).

Pursuant to General Order No. 18, as issued by the Chief District Judge of the Northern District of New York, "[t]he Magistrate Judge will treat the proceeding as if both parties had accompanied their briefs with a motion for judgment on the pleadings . . . ."

For the reason set forth below, this Court recommends that the Commissioner's motion be granted, Plaintiff's motion be denied, and this case be closed.

---

[2]Citations to "T" refer to the Administrative Transcript.  (Docket No. 11)

### III. DISCUSSION

**A.     Legal Standard**

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. <u>See</u> 42 U.S.C. §§ 405(g), 1383(c)(3); <u>Wagner v. Sec'y of Health & Human Servs.</u>, 906 F.2d 856, 860 (2d Cir.1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. <u>Johnson v. Bowen</u>, 817 F.2d 983, 986 (2d Cir.1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); <u>see</u> <u>Grey v. Heckler</u>, 721 F.2d 41, 46 (2d Cir.1983); <u>Marcus v. Califano</u>, 615 F.2d 23, 27 (2d Cir.1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Richardson v. Perales</u>, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. <u>See</u> <u>Rutherford v. Schweiker</u>, 685 F.2d 60, 62 (2d Cir.1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." <u>Williams v. Bowen</u>, 859 F.2d 255, 258 (2d Cir.1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F.Supp. 147, 153 (S.D.N.Y.1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir.1984).

An individual under the age of eighteen (18) is disabled, and thus eligible for SSI benefits, if he or she has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(C)(i). However, that definitional provision excludes from coverage any "individual under the age of [eighteen] who engages in substantial gainful activity...." 42 U.S.C. § 1382c(a)(3)(C)(ii).

By regulation, the agency has prescribed a three-step evaluative process to be employed in determining whether a child can meet the statutory definition of disability. 20 C.F.R. § 416.924; Kittles v. Barnhart, 245 F.Supp.2d 479, 487-88 (E.D.N.Y.2003); Ramos v. Barnhart, 02 Civ.3127, 2003 WL 21032012, at *7 (S.D.N.Y. May 6, 2003).

The first step of the test, which bears some similarity to the familiar five-step analysis employed in adult disability cases, requires a determination of whether the child has engaged in substantial gainful activity. 20 C .F.R. § 416.924(b); Kittles, 245 F.Supp.2d at 488. If so, then both statutorily and by regulation the child is ineligible for SSI benefits. 42

4

U.S.C. § 1382c(a)(3)(C)(ii); 20 C.F.R. § 416.924(b).

If the claimant has not engaged in substantial gainful activity, the second step of the test next requires examination of whether the child suffers from one or more medically determinable impairments that, either singly or in combination, are properly regarded as severe, in that they cause more than a minimal functional limitation. 20 C.F.R. § 416.924(c); Kittles, 245 F.Supp.2d at 488; Ramos, 2003 WL 21032012, at *7.

If the existence of a severe impairment is discerned, the agency must then determine, at the third step, whether it meets or equals a presumptively disabling condition identified in the listing of impairments set forth under 20 C.F.R. Pt. 404, Subpt. P., App. 1 (the "Listings"). Id. Equivalence to a listing can be either medical or functional. 20 C.F.R. § 416.924(d); Kittles, 245 F.Supp.2d at 488; Ramos, 2003 WL 21032012, at *7. If an impairment is found to meet, or qualify as medically or functionally equivalent to, a listed disability and the twelve-month durational requirement is satisfied, the claimant will be deemed disabled. 20 C.F.R. § 416.924(d)(1); Ramos, 2003 WL 21032012, at *8.

Analysis of functionality is informed by consideration of how a claimant functions in six main areas referred to as "domains." 20 C.F.R. § 416.926a(b)(1); Ramos, 2003 WL 21032012, at *8. The domains are described as "broad areas of functioning intended to capture all of what a child can or cannot do." 20 C.F.R. § 416.926a(b)(1). Those domains include: (i) [a]cquiring and using information; (ii) [a]ttending and completing tasks; (iii) [i]nteracting and relating with others; (iv) [m]oving about and manipulating objects; (v) [c]aring for [oneself]; and (vi) [h]ealth and physical well-being. 20 C.F.R. § 416.926a(b)(1).

Functional equivalence is established in the event of a finding of an "extreme" limitation, meaning "more than marked," in a single domain. 20 C.F.R. § 416.926a(a);

Ramos, 2003 WL 21032012, at *8. An "extreme limitation" is an impairment which "interferes very seriously with [the claimant's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3)(I) (emphasis added).

Alternatively, a finding of disability is warranted if a "marked" limitation is found in any two of the listed domains. 20 C.F.R. § 416.926a(a); Ramos, 2003 WL 21032012, at *8. A "marked limitation" exists when the impairment "interferes seriously with [the claimant's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i). "A marked limitation may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with the ability to function (based upon age-appropriate expectations) independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 112.00(C).

## B.   Analysis

### 1.   Commissioner's Decision

The ALJ noted that Claimant was born on January 19, 2006, and thus was an "older infant" pursuant to 20 CFR § 416.926a(g)(2) on June 30, 2006, the date the application for benefits was filed, and January 12, 2009, the date of the ALJ's decision. (T at 16).  The ALJ found that Claimant had not engaged in substantial gainful activity at any time.  (T at 16). He further determined that Claimant suffers from the following severe impairment pursuant to 20 CFR § 416.924 (c): asthma.  (T at 16).

However, the ALJ found that Claimant did not have an impairment or combination

of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix I (the "Listings").  (T at 16).

In addition, the ALJ concluded that Claimant did not have an impairment or combination of impairments that functionally equals an impairment set forth in the Listings. (T at 18).  The ALJ found that while Claimant's medically determinable impairment could reasonably be expected to produce the alleged symptoms, the statements by the Plaintiff, Claimant's grandmother, and a child care worker concerning the intensity, persistence, and limiting effects of the symptoms were not credible to the extent alleged. (T at 19).

As to the six domains of function: the ALJ determined that Claimant had: (1) no limitation in acquiring and using information; (2) no limitation with regard to attending and completing tasks; (3) no limitation in interacting and relating to others; (4) no limitation in moving about and manipulating objects; (5) no limitation in the ability to care for himself; and (6) a less than marked limitation with regard to health and physical well-being. (T at 20-24).

In light of the foregoing, the ALJ found that Claimant had not been disabled, as defined under the Act, since the date the application was filed.  (T at 24).  As noted above, the ALJ's decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review.  (T at 6-9).

## 2.    Plaintiff's Arguments

Plaintiff offers the following three (3) arguments in support of her contention that the Commissioner's decision should be reversed.  First, she argues that Claimant is disabled because his impairment meets or medically equals the impairment set forth in § 103.03 (B) of the Listings.  Second, Plaintiff asserts that the ALJ did not follow the treating physician's

rule.  Third, Plaintiff argues that the ALJ did not properly evaluate the credibility of the hearing testimony and evidence provided by other sources, including Claimant's grandmother and a childcare worker.  Each argument will be addressed in turn.

### a.    § 103.03 (B) of the Listings

To meet the impairment set forth in § 103.03 (B) of the Listings (the Listing for asthma), the claimant must have had asthma "attacks," in spite of prescribed treatment and requiring physician intervention, occurring at least once every two (2) months or at least six (6) times a year.  20 C.F.R. Part 404 Subpart P, Appendix I, § 103.03 (B).  "Attacks" are defined as "prolonged symptomatic episodes lasting one or more days and requiring intensive treatment, such as intravenous bronchodilator or antibiotic administration or prolonged inhalational bronchodilator therapy in a hospital, emergency room or equivalent setting." 20 C.F.R. Part 404 Subpart P, Appendix I, § 3.00(C).

When considering whether the claimant has suffered the requisite number of attacks under § 103.03 (B), "[e]ach inpatient hospitalization for longer than 24 hours for control of asthma counts as two attacks, and an evaluation period of at least 12 consecutive months must be used to determine the frequency of attacks."

Plaintiff argues that Claimant's asthma meets or medically equals the impairment set forth in § 103.03 (B).  In this regard, Plaintiff notes that Claimant was hospitalized at Wilson Memorial Regional Medical Center from March 10, 2006, through March 12, 2006, where he was treated for moderate wheezing and coughing and probable bronchiolitis. (T at 126-29).  Plaintiff contends that this hospitalization, which lasted over 24 hours, should count as two "attacks" under § 103.03.

Plaintiff also points to four (4) additional treatments during the twelve (12) month

8

period following the March 2006 hospitalization.  On April 17, 2006, Claimant was treated

with albuterol at Binghamton General Hospital for "mild difficulty breathing" with congestion

and wheezing (T at 239, 244).  Claimant was treated with albuterol again on June 26, 2006,

this time at Wilson Memorial Regional Hospital, for "moderate" wheezing, cough, and

trouble breathing. (T at 183, 187).  The treatment notes indicate that Dr. Theodore Petkov

assessed Claimant as suffering from "[a]cute asthma exacerbation." (T at 188).

Claimant visited Wilson Memorial again on August 28, 2006, with complaints of

moderate, but constant, wheezing and cough. (T at 191).  He received albuterol treatment.

(T at 193).  Plaintiff also points to a December 12, 2006, letter from Mary Foster (a nurse

practitioner) and Ran D. Anbar, M.D. of the SUNY Upstate Medical University's Department

of Pediatrics, Division of Pulmonology.  (T at 224).  The letter indicates that Claimant

"experienced a wheeze along with an increase in his daily cough" on the date the letter was

written and was treated with Xopenex. (T at 224).

The ALJ noted that a visit to a doctor or emergency room with a respiratory

complaint does not, without more, satisfy the applicable definition of an "attack." (T at 18).

The ALJ recognized Claimant's one overnight hospitalization in March of 2006 and noted

that the July 2006 visit to the emergency room required intervention for acute asthma. (T

at 18).  However, the ALJ noted the lack of any evidence of other episodes requiring

"intensive treatment, such as intravenous bronchodilator or antibiotic administration or

prolonged inhalational bronchodilator therapy." (T at 18).  Thus, the ALJ concluded that

Claimant's impairment did not meet or equal the impairment set forth in § 103.03 of the

Listings.

This Court finds that the ALJ's decision was supported by substantial evidence.

First, as a threshold matter, it is not clear that the initial March 2006 hospitalization counted as an "attack." To satisfy the Listing, the claimant must experience the attack "in spite of prescribed treatment."

The record is clear that when he experienced the asthmatic episode leading to the March 2006 hospitalization, Claimant was not on asthma therapy and not taking asthma medication. (T at 126). Thus, this was not technically an attack that occurred in spite of prescribed treatment. Robinson v. Chater, No. 94 CIV. 9430, 1996 WL 345899, at *5 (S.D.N.Y. June 21, 1996)("Furthermore, Section 103.03.B requires attacks in spite of prescribed treatment. There is substantial evidence in the record that the reason David required emergency room treatment was that he was not receiving required treatment. Thus, there is substantial evidence to support the ALJ's determined that David's condition did not meet the requirements of Section 103.03(B).").

This Court is mindful that a literal reading of §103.03 (B) yields a rather curious result where, as here, the claimant's initial diagnosis of asthma is made during an inpatient hospitalization. Employing a literal reading of the Listing under such a scenario, the hospitalization would never count as an "attack," no matter how severe, because the claimant had not previously been diagnosed and thus no treatment had been prescribed. It is not clear that this result is consistent with either the drafter's intentions or common sense.

In any event, this Court need not reach the issue because Claimant did not sustain the requisite number of attacks over the 12-month period even if the March 2006 hospitalization is considered two attacks. As the ALJ correctly noted, not every hospital visit or treatment is an "attack." Although Claimant received some breathing treatments

during his emergency room visits, there is no indication that the treatments were "prolonged" or that Claimant received the sort of "intensive" treatment or therapy required to meet the definition of "attacks."

In each of the cases, except for the initial hospitalization in March 2006, Claimant was treated for symptoms generally described as mild or moderate, responded to the breathing treatment, and was discharged shortly thereafter with an improved condition. This Court thus finds no reversible error in the ALJ's conclusion that Plaintiff's asthma did not reach listing-level severity. Rather, this conclusion was supported by substantial evidence. See, e.g., Perez v. Astrue, No. 2:09-1504, 2009 WL 4796738, at *4 (D.N.J. Dec. 9, 2009)(finding that emergency room visits did not qualify as attacks and sustaining ALJ's conclusion that asthma, did not reach listing-level severity); Sylvester ex rel. Sylvester v. Apfel, No. CIV. A. 97-3510, 1999 WL 179471, at *4 (E.D.La. Mar. 31, 1999)(concluding that asthma did not meet listing-level severity because "[m]any of the emergency room reports show . . that [claimant] was in no apparent distress or had only 'mild to moderate' symptoms").

### b.   Treating Physican's Rule

Under the "treating physician's rule," the ALJ must give controlling weight to the treating physician's opinion when the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2); Halloran v. Barnhart, 362

F.3d 28, 31-32 (2d Cir. 2004); Shaw v. Chater, 221 F.3d 126, 134 (2d Cir.2000).[3]

Even if a treating physician's opinion is deemed not to be deserving of controlling weight, an ALJ may nonetheless give it "extra weight" under certain circumstances.  In this regard, an ALJ should consider the following factors when determining the proper weight to afford the treating physician's opinion if it is not entitled to controlling weight: (1) length of the treatment relationship and the frequency of examination, (2) nature and extent of the treatment relationship, (3) supportability of opinion, (4) consistency, (5) specialization of the treating physician, and (6) other factors that are brought to the attention of the court. C.F.R. § 404.1527(d)(1)-(6); see also de Roman, 2003 WL 21511160, at *9; Shaw, 221 F.3d at 134; Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir.1998); Schaal v. Apfel, 134 F.3d 496, 503 (2d Cir. 1998).

At the end of the hearing before the ALJ, Claimant's counsel advised the ALJ that she was going to "check with Dr. DeGuardi [Claimant's treating physician] about getting a functional capacity evaluation . . . ." (T at 287).  The ALJ cautioned counsel to make sure that the evaluation was completed using the appropriate form, *i.e.* a form addressing the childhood disability standard. (T at 287-88).  Counsel thereafter obtained and provided medical records from Dr. DeGuardi to the ALJ. (T at 247-262).

Dr. DeGuardi also completed a form (possibly prepared by Claimant's counsel at the time) indicating that: (1) Claimant had asthma with attacks in spite of prescribed treatment (including frequent nebulizer treatments); (2) Claimant experienced wheezing during

---

[3]"The 'treating physician's rule' is a series of regulations set forth by the Commissioner in 20 C.F.R. § 404.1527 detailing the weight to be accorded a treating physician's opinion." de Roman v. Barnhart, No.03-Civ.0075, 2003 WL 21511160, at *9 (S.D.N.Y. July 2, 2003).

exacerbations; (3) Claimant's attacks sometimes required physician intervention (either in the emergency room or medical office); (4) Claimant was given nebulizer treatments in the doctor's office; and Claimant's baseline condition was "healthy." (T at 262).

Plaintiff, through new counsel, now argues that the ALJ erred by (a) failing to re-contact Dr. DeGuardi and request a functional capacity evaluation and (b) failing to give Dr. DeGuardi's assessment controlling weight.   This Court finds that the ALJ adequately developed the record and his consideration of Dr. DeGuardi's assessment was in accord with applicable law and supported by substantial evidence.

The ALJ has an "affirmative duty to develop the record and seek additional information from the treating physician, *sua sponte*, even if plaintiff is represented by counsel" to determine upon what information the treating source was basing his opinions. Colegrove v. Comm'r of Soc. Sec., 399 F.Supp.2d 185, 196 (W.D.N.Y.2005); see also 20 C.F.R. §§ 404.1212(e)(1), 416.912(e) (1) ("We will seek additional evidence or clarification from your medical source when the report from your medical source ... does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques."). Failure to re-contact is error. See Taylor v. Astrue, No. CV-07-3469, 2008 WL 2437770, at *3 (E.D.N.Y. June 17, 2008) (finding it error for the ALJ to not re-contact Plaintiff's treating physician when he determined that the physician's opinion was "not well-supported by objective medical evidence").

Here, the ALJ did provide an opportunity for the submission of additional evidence from Dr. DeGuardi and, as noted above, extensive treatment notes and listing of findings were obtained and included in the record. (T at 247-262).   Dr. DeGuardi offered her assessment regarding Claimant's condition, indicating that his baseline condition was

"healthy," that his attacks occasionally required intervention (primarily in the form of office nebulizer treatments), and that the attacks were characterized by wheezing. (T at 262). Dr. DeGuardi's treatment notes further described Claimant as having "Croup, Mild" (T at 248), "diffuse wheezing-mild" with "no cough" (T at 250), and "Lungs clear to auscultation." (T at 259). Given the presence of Dr. DeGuardi's overall assessment in the record, along with extensive treatment notes, this Court is satisfied that the ALJ fulfilled his duty to develop the record. The doctor gave no indication in either her overall assessment or her treatment notes that she would have assessed marked limitations in any of the domains used to determine childhood disability. Plaintiff has not pointed to any portion of the record suggesting that such a result would have been obtained.

Moreover, the ALJ also considered the assessments of two non-examining State Agency review consultants. The first, J. Randall, M.D., reviewed Claimant's medical records and concluded that Claimant had no limitations as to acquiring and using information, attending and completing tasks, interacting and relating with others, moving about and manipulating objects, or caring for himself. (T at 177-78). Dr. Randall assessed less than marked limitations as to health and physical well-being. (T at 178). The second State Agency review consultant, Dr. Mohanty, reached the same conclusions. (T at 141-43).

It is well settled that an ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability. See 20 C.F.R. §§ 404.1512(b)(6), 404.1513(c), 404.1527(f)(2), 416.912(b)(6), 416.913(c), and 416.927(f)(2); see also Leach ex. Rel. Murray v. Barnhart, No. 02 Civ. 3561, 2004 WL 99935, at 9

(S.D.N.Y. Jan.22, 2004) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims. As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole.").

Such reliance is particularly appropriate where, as here, the opinions of the non-examining State agency medical consultants are supported by the weight of the evidence. See Brunson v. Barnhart, 01-CV-1829, 2002 WL 393078, at *14 (E.D.N.Y. Mar. 14, 2002) (holding that opinions of non-examining sources may be considered where they are supported by evidence in the record).

In light of the foregoing, this Court finds that the ALJ adequately developed the record and finds no error in the ALJ's consideration of Dr. DeGuardi's assessment.

### c.   Credibility Determination

Subjective symptomatology by itself cannot be the basis for a finding of disability. A claimant must present medical evidence or findings that the existence of an underlying condition could reasonably be expected to produce the symptomatology alleged. See 42 U.S.C. §§ 423(d)(5)(A), 1382c (a)(3)(A); 20 C.F.R. §§ 404.1529(b), 416.929; SSR 96-7p; Gernavage v. Shalala, 882 F.Supp. 1413, 1419 (S.D.N.Y.1995).

"An administrative law judge may properly reject claims of severe, disabling pain after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence." Lewis v. Apfel, 62 F.Supp.2d 648, 651 (N.D.N.Y.1999) (internal citations omitted).

To this end, the ALJ must follow a two-step process to evaluate the claimant's credibility, set forth in SSR 96-7p:

First, the adjudicator must consider whether there is an underlying medically determinable physical or medical impairment (s) ... that could reasonably be expected to produce the individual's pain or other symptoms ....

Second, ... the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities ....

According to 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii) and 416.929(c)(3)(i)-(vii), if the claimant's contentions are not supported by objective medical evidence, the ALJ must consider the following factors in order to make a determination regarding the claimant's credibility:

1.  [Claimant's] daily activities;
2.  The location, duration, frequency and intensity of [Claimant's] pain or other symptoms;
3.  Precipitating and aggravating factors;
4.  The type, dosage, effectiveness, and side effects of any medication [Claimant] take[s] or ha[s] taken to alleviate ... pain or other symptoms;
5.  Treatment, other than medication [Claimant] receive[s] or ha[s] received for relief of ... pain or other symptoms;
6.  Any measure [Claimant] use[s] or ha[s] used to relieve ... pain or other symptoms;
7.  Other factors concerning [Claimant's] functional limitations and restrictions due to pain or other symptoms.

If the ALJ finds that the claimant's pain contentions are not credible, he or she must state his reasons "explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." Young v. Astrue, No. 7:05-CV-1027, 2008 WL 4518992, at *11 (N.D.N.Y. Sept. 30, 2008) (quoting Brandon v. Bowen, 666 F.Supp 604, 608 (S.D.N.Y.1987)).

In this case, the ALJ heard testimony from Plaintiff regarding Claimant's asthma attacks, which she described as sometimes lasting a week, during which time she provided treatment with a nebulizer. (T at 277).  Plaintiff stated that Claimant is able to walk, talk,

16

and feed himself and is otherwise in good health. (T at 280).  Plaintiff explained that when Claimant is around other children who are sick, he begins to wheeze and experience other symptoms. (T at 283).  She has noticed that he is only able to play for 5-10 minutes before becoming fatigued. (T at 285).  Plaintiff also described sleeping difficulties.  (T at 286).

Plaintiff also submitted records from her employer, showing frequent work absences related to Claimant's illnesses. (T at 74-77).  She also provided a document signed by Earsel Harageones, who identified himself as a former employee at Future Faces Childcare Center.  (T at 79).  Harageones states that he cannot remember the dates, but does recall the Claimant was a "very sick little boy" and that the childcare center needed to contact Plaintiff "3 to 4 times a week" to come and pick up Claimant due to illness. (T at 79).   In a second document, Harageones offers that he gave "medicine" to Claimant twice a day. (T at 80).

Plaintiff also provided an affidavit from Claimant's grandmother, in which she states that she also gave nebulizer treatments to Claimant and began babysitting for him because the child care center was calling Plaintiff 3-4 times per week due to illness. (T at 81). Plaintiff submitted her own affidavit further supporting and expanding upon her hearing testimony. (T at 82).

The ALJ concluded that Claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the statements concerning the intensity, persistence, and limiting effects of those symptoms were not credible to the extent alleged. (T at 19).  The ALJ referenced the affidavits by Plaintiff and Claimant's grandmother, as well as the statements of the childcare worker, but found that the statements were not "supported by the longitudinal medical record." (T at 19).

17

Plaintiff argues that the ALJ's credibility determination was flawed.  In this regard, Plaintiff notes that the ALJ made an unproductive attempt to elicit testimony from Claimant (who was 2 ½ years old at the time of the hearing) (T at 273).  However, Plaintiff does not articulate any prejudice arising from this attempt or explain what the ALJ could have or should have done differently in this regard.

Plaintiff does correctly note that the ALJ's credibility assessment is not supported by a detailed discussion of his reasons for finding the statements from the various parties not "supported by the longitudinal medical record."   However, given the medical records discussed above (in particular, the hospital reports and treatment notes generally describing the symptoms as mild or moderate) and the assessment of the State Agency review consultants, the ALJ's rationale for discounting the subjective evidence can reasonably be inferred from his decision.  Although a more detailed discussion would have been preferable, this is not a case in which the Court cannot determine how the ALJ reached his findings regarding credibility.  To the contrary, the ALJ's discussion of the record evidence is extensive and his reasons for discounting the credibility of the subject complaints, while not perhaps as detailed as they should be, are nevertheless clearly discernable from the decision.

For example, after discussing in detail the treatment notes and hospitalization records and immediately before making his credibility assessment, the ALJ explained that "[i]n terms of the claimant's alleged disabling symptoms, although the claimant was taken to the emergency room several times for cough and wheezing, in all but one case, the clinical impression was not asthma or exacerbation of asthma." (T at 19).  In addition, the ALJ noted that "[t]he medical evidence generally documents that the claimant's oxygen

18

saturation was within normal limits upon examination, with only mild wheezing." (T at 19).

"It is the function of the [Commissioner], not [reviewing courts], to resolve evidentiary conflicts and to appraise the credibility of witnesses." Carroll v. Secretary of Health and Human Servs., 705 F.2d 638, 642 (2d Cir.1983) (citations omitted). If there is substantial evidence in the record to support the Commissioner's findings, "the court must uphold the ALJ's decision to discount a claimant's subjective complaints of pain." Aponte v. Sec'y, Dep't of Health & Human Servs, 728 F.2d 588, 591 (2d Cir.1984) (citations omitted).

The Court finds that the ALJ properly exercised his discretion to evaluate the credibility of the subjective evidence and rendered an independent judgment regarding the extent of the subjective complaints based on the objective medical and other evidence. See e.g. Mimms v. Sec'y of Health and Human Servs., 750 F.2d 180, 196 (2d Cir.1984).  The ALJ's decision should therefore be upheld.


## IV. CONCLUSION

After carefully examining the administrative record, the Court finds substantial evidence supports the Commissioner's decision in this case, including the objective medical evidence and supported medical opinions. It is clear to the Court that the ALJ thoroughly examined the record, afforded appropriate weight to all the medical evidence, including Claimant's treating providers and the non-examining consultants, and afforded the subjective claims of symptoms and limitations an appropriate weight when rendering his decision that Claimant is not disabled. The Court finds no reversible error and because

substantial evidence supports the Commissioner's decision, the Court recommends that

the Commissioner be GRANTED judgment on the pleadings.

Respectfully submitted,

Dated:   June 30, 2010

      Syracuse, New York

Victor E. Bianchini
United States Magistrate Judge

## V. ORDERS

Pursuant  to  28  USC  §636(b)(1),  it  is  hereby  ordered that this Report &

Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy

of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the**

**Clerk of this Court within fourteen (14) days after receipt of a copy of this Report &**

**Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b)**

**of the Federal Rules of Civil Procedure, as well as NDNY Local Rule 72.1(c).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION**

**WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE**

**OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material *which could have been, but were not*, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

SO ORDERED.

June 30, 2010

Victor E. Bianchini
United States Magistrate Judge